UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DEWAYNE S. MCGHEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-CV-206-HBG |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 19].

Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 20 & 21] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 & 23]. Dewayne S. McGhee ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On June 16, 2015, Plaintiff protectively filed an application for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

on January 15, 2015. [Tr. 18, 55, 93, 174–87]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 145]. A hearing was held on April 5, 2018. [Tr. 47–65]. On May 9, 2018, the ALJ found that Plaintiff was not disabled. [Tr. 18–32]. The Appeals Council denied Plaintiff's request for review on September 26, 2018 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on November 20, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2.  The claimant has not engaged in substantial gainful activity since January 15, 2015, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: chronic diarrhea secondary to H. Pylori, coronary artery disease, osteoarthritis, diabetes, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with occasional climbing and crouching; frequent balancing, stooping, kneeling and crawling; occasional exposure to

temperature extremes and to hazards; and is able to understand, remember, and carry out simple and detailed instructions and to concentrate and persistent [sic] on simple and detailed tasks for two hour periods throughout an eight-hour workday; in a setting that involves occasional interaction with others; and is able to adapt to occasional, routine changes in the work setting.

6. The claimant is capable of performing past relevant work as a production assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2015, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 20–31].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

3

The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to

last for a continuous period of at least twelve months, and his
impairment meets or equals a listed impairment, claimant is
presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his
past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his
past relevant work, if other work exists in the national economy that
accommodates his residual functional capacity ("RFC") and
vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

"based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§

404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his

limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529.

The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform. *Her

v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V.    ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence

in several regards. First, Plaintiff maintains that the ALJ improperly afforded great weight to the

opinions of the nonexamining state agency consultants who did not review a complete medical

record. [Doc. 21 at 11–12]. Similarly, Plaintiff asserts that the ALJ therefore improperly afforded

little weight to the opinion of examining physician, Rebekah Crump-Austin, M.D., who offered

the only medical opinion of record after his heart attack. [*Id.*]. Plaintiff claims that the ALJ also

erred by failing to discuss or explain the weight he afforded to the opinion of consultative psychological examiner, B. Wayne Lanthorn, Ph.D. [*Id.* at 13]. Next, Plaintiff alleges that the ALJ failed to properly weigh his subjective allegations of pain and disability. [*Id.* at 15]. Ultimately, Plaintiff maintains that the ALJ's finding that he could perform his past relevant work, as well as the alternative finding that Plaintiff could perform other work that exists in the national economy, are not supported by substantial evidence because "Plaintiff suffered a heart attack after the evidence relied upon by the [ALJ]" and the RFC "did not properly consider that [he] had an extreme limitation in his ability to respond appropriately to ordinary work stress." [*Id.* at 14]. The Court will review Plaintiff's assignments of error in turn.

### A.    ALJ's Treatment of Medical Opinions

#### 1.    Nonexamining State Agency Consultants and Dr. Crump-Austin

Plaintiff claims that the ALJ "was in error in placing greater weight upon outdated opinions from the State Agency consultants in view of [his] subsequent heart attack," and that Dr. Crump-Austin's opinion was "uncontradicted in the record" as the only opinion "from any physician who has examined, treated, or reviewed [his] claim after his heart attack." [*Id.* at 11]. Plaintiff further claims that because the ALJ failed to credit Dr. Crump-Austin's opinion, "a consultative physical examination with a residual functional capacity was essential for a full and fair resolution of [his] claim." [*Id.* at 12].

The Commissioner responds that the ALJ appropriately reviewed the medical record after the opinions of the nonexamining state agency consultants, and that the ALJ is tasked with determining Plaintiff's RFC. [Doc. 23 at 13]. Additionally, the Commissioner claims that Dr. Crump-Austin's opinion was not uncontradicted, as the ALJ detailed how the opinion was

inconsistent with other medical evidence in the record [*Id.*], and that the ALJ was not required to order a consultative examination [*Id.* at 17].

Deborah Webster-Clair, M.D., reviewed the evidence of record at the initial level of the agency's review on September 15, 2016, and opined that Plaintiff could occasionally lift and/or carry up to fifty pounds, while being able to frequently lift and/or carry up to twenty-five pounds. [Tr. 86]. Further, Dr. Webster-Clair opined that Plaintiff could stand and/or walk, as well as sit, for six hours in an eight-hour workday, and that he was otherwise unlimited in his ability to push or pull. [*Id.*]. Dr. Webster-Clair found that Plaintiff could occasionally crouch or climb ramps or stairs, as well as ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, and crawl. [Tr. 87]. On April 19, 2016, Walter Cobbs affirmed Dr. Webster-Clair's findings on reconsideration. [Tr. 119–21].

Dr. Crump-Austin performed a disability examination at the request of Plaintiff's counsel on February 27, 2018. [Tr. 470–74]. Dr. Crump-Austin noted that Plaintiff experienced acute myocardial infarctions in June and November of 2017, and had two cardiac stents deployed on June 14, 2017, and one stent deployed on November 1, 2017. [Tr. 470]. Additionally, Dr. Crump-Austin noted that Plaintiff continued to have symptoms of angina, shortness of breath, ankle edema, dizziness, and fatigue, and that his ejection fraction was measured by echocardiogram at 50-55%. [*Id.*]. Dr. Crump-Austin detailed that Plaintiff was able to stand less than ten minutes and walk approximately 150-200 feet before having to rest as a result of his cardiac symptoms. [*Id.*]. Lastly, Dr. Crump-Austin noted that after sitting for more than thirty to forty-five minutes, Plaintiff's legs "go numb" and he needs to reposition himself due to lower extremity dyasthesias. [Tr. 470–71].

Dr. Crump-Austin then completed a medical assessment of Plaintiff's ability to perform work-related activities on March 22, 2018. [Tr. 475–76]. First, Dr. Crump-Austin opined that Plaintiff could lift and carry from five to eight pounds maximum occasionally (from very little to one-third of an eight-hour workday) and ten to twelve pounds frequently (from one-third to two-thirds of an eight-hour day), due to his angina, cardiac fatigue, and polyarthralgias. [Tr. 475]. Dr. Crump-Austin also opined that Plaintiff could stand and/or walk for two to three hours total and for four hours without interruption, as well as that Plaintiff could sit for three to four hours total, and four hours without interruption, and that he requires frequent repositioning. [*Id.*].[2] Additionally, Dr. Crump-Austin found that Plaintiff could never climb, kneel, crouch, or crawl, and that he could occasionally stoop or balance. [*Id.*]. Lastly, Dr. Crump-Austin detailed that Plaintiff could occasionally reach, handle, push/pull, and grip, but that he could frequently feel, see, hear, and speak. [Tr. 476].

In the disability decision, the ALJ detailed the opinions of the nonexamining state agency consultants while broadly reviewing the medical record in this case. [Tr. 24]. Subsequently, in the RFC determination, the ALJ stated that he "accepts the opinions of the State Agency consultants," and that "[a]lthough they are non-examining sources, their opinions appear consistent with the overall objective medical findings." [Tr. 29]. However, the ALJ noted that while the nonexamining state agency consultants limited Plaintiff to "a medium exertional capacity," he "restricted [Plaintiff] to a range of light exertion, considering the combined impairments." [*Id.*].

---

[2] The Court notes that Dr. Crump-Austin appears to have been mistaken with regard to the designations for occasional and frequent, as well as total and without interruption, as the opinion states that Plaintiff could lift and carry more weight frequently, as opposed to occasionally, as well as that Plaintiff could stand and/or walk for more time without interruption than total in a day.

Additionally, the ALJ reviewed the February 27, 2018 disability examination performed by Dr. Crump-Austin, as well as her March 22, 2018 medical assessment. [Tr. 25]. The ALJ noted that during the examination, Dr. Crump-Austin "diagnosed chronic gastroenteritis, coronary artery disease with angina, osteoarthritis, hypertension, non-insulin dependent diabetes mellitus, hyperlipidemia, and renal insufficiency," as well as "indicated that his physical limitations make him best suited for a less then sedentary work environment." [*Id.*]. In the RFC determination, the ALJ assigned little weight to Dr. Crump-Austin's opinion, as it was "inconsistent with the evidence of record." [Tr. 29]. The ALJ found that Dr. Crump-Austin cited dyspnea and angina in support of her findings, which were not well-documented in the medical record after Plaintiff's myocardial infraction and stents. [*Id.*]. Further, the ALJ found that Dr. Crump-Austin "relied on [Plaintiff's] report of limitations in arriving at her assessment." [*Id.*].

Ultimately, Plaintiff challenges that ALJ's assignment of little weight to Dr. Crump-Austin's opinion, while accepting the opinion of the nonexamining state agency consultants, despite the fact that Dr. Crump-Austin was the only physician that examined Plaintiff after his heart attack.

"[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). In *Spicer*, the Sixth Circuit found that the ALJ had satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.* Similarly,

in order for an ALJ to provide "'some indication' that he 'at least considered' that the source did not review the entire record . . . the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409).

In the present case, Plaintiff correctly asserts that the nonexamining state agency consultants did not review a medical record which included his acute myocardial infarctions and stents in June and November of 2017. However, the ALJ's decision reflects that he made an independent determination based on all the medical evidence and that his analysis spanned the entire record. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the dated nonexamining state agency consultant's opinion, rather than the current treating physician opinion found to be inconsistent with the record, as "the ALJ's own analysis clearly spanned the entire record—through the final degenerative changes to [Plaintiff's] spine that culminated in a cervical discectomy and fusion, the last medical event included in the record"); *accord Mcwhorter v. Berryhill*, No. 3:14-cv-1658, 2017 WL 1364678, at *12 (M.D. Tenn. Apr. 14, 2017); *Quinlavin v. Comm'r of Soc. Sec.*, No. 15-cv-731, 2017 WL 583722, at *4 (N.D. Ohio Feb. 14, 2017).

As the Court has previously discussed, the ALJ reviewed Dr. Crump-Austin's opinion in detail. Further, the ALJ reviewed Plaintiff's cardiac care treatment records. The ALJ discussed Plaintiff's August 15, 2017 treatment note from Wellmont CVA Heart Institute which displayed his "new history of 2V coronary artery disease/mild left ventricular dysfunction status post posterior STEMI on June 14, 2017." [Tr. 24]; *see* [Tr. 438]. The Commissioner's brief relates that STEMI "means an individual has had a complete blockage of a coronary artery." *See* [Doc. 23 at 4]. The ALJ detailed that Plaintiff was reported to have been "fairly well" since his

hospitalization and heart catheterization and placement of two stents on June 14, 2017, as well as that while Plaintiff reported having a near synocopal episode recently, he had not required any Nitroglycerin since hospitalization. [Tr. 25]; *see* [Tr. 438]. Further, the August 15, 2017 treatment note reflects that Plaintiff "denies any anginal type chest pain, dyspnea, DOE, orthopnea, PND, edema, syncope, palpitations, TIA/CVA symptoms, melena, or hematochezia." [Tr. 438].

Additionally, the ALJ reviewed that on a cardiovascular examination, Plaintiff's heart had a regular rate and rhythm, normal S1 and S2, and no murmur, rub, or gallop. [Tr. 25]; *see* [Tr. 440–41]. Plaintiff's PMI was nondisplaced, there was no clubbing, cyanosis, or edema, and his "EKG was abnormal with sinus arrhythmia and left anterior fascicular block." [*Id.*]. The ALJ also discussed Plaintiff's follow-up visits at Wellmont on September 25, 2017 [Tr. 25] and January 26, 2018 [*Id.*]. Lastly, the ALJ noted that Plaintiff's "last cardiac cath was done November 2, 2017 and he underwent a single drug eluting stent placement." [*Id.*].

Ultimately, the ALJ cited to medical records from both before and after Plaintiff's heart attack and subsequent treatment, while also noting the reasons for finding that Dr. Crump-Austin's opinion was entitled to little weight. The ALJ discussed that her opinion was largely based on Plaintiff's reporting of his limitations, and the cited "dyspnea and angina" in her findings were not well-documented in the medical record after Plaintiff's "myocardial infarction and stents." [Tr. 29]. Further, the ALJ adopted a more restrictive RFC than opined by the nonexamining state agency consultants, restricting Plaintiff "to a range of light exertion." [*Id.*]; *cf. Gray v. Berryhill*, No. 5:17-cv-380-EBA, 2018 WL 1916347, at *7 (E.D. Ky. Apr. 23, 2018) (holding an ALJ failed to indicate that nonexamining state agency consultants did not review a complete case record, as the ALJ "only mentions Dr. Meyer's opinion by stating, '[t]he [ALJ] accords great weight to the opinions of the State agency medical consultants because the opinions are supported by the overall

evidence'").  In *Kepke*, the Sixth Circuit found that the ALJ subjected the opinions of two nonexamining state agency physicians to some scrutiny, as "the ALJ disagreed with [one of the nonexamining physician's] assessment[s] of Kepke's limitations in her activities of daily living and social functioning, and applied even greater restrictions in this area than [the nonexamining state agency physician] opined were appropriate."  636 F. App'x 625, 632 (6th Cir. 2016).

Accordingly, although the nonexamining state agency consultants did not review a complete record, "the ALJ's own analysis clearly spanned the entire record." *See Gibbens*, 659 F. App'x at 247–48.  Therefore, the ALJ "subjected [the nonexamining state agency consultants'] opinion[s] to scrutiny" sufficient to find that he considered that the nonexamining state agency consultants did not review the entire record. *See Kepke*, 636 F. App'x at 632.  Moreover, the ALJ was not required to adopt Dr. Crump-Austin's opinion, as opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)).  Ultimately, opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  While Plaintiff claims that Dr. Crump-Austin's opinion was uncontradicted, the ALJ detailed why he found that the opinion was not supported by the medical record.

Plaintiff also claims that the ALJ should have ordered a consultative examination after failing to adopt Dr. Crump-Austin's opinion.  However, the applicable regulations do not require an ALJ to refer a claimant to a consultative specialist. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *see also Foster v. Halter,* 279 F.3d 348, 355 (6th Cir. 2001). The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give

us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 416.917. Additionally, it is not error to fail to obtain additional evidence where the record contains a "considerable amount of evidence" pertaining to the claimant's limitations. *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013). Here, the ALJ extensively reviewed Plaintiff's treatment after his myocardial infarction, heart catheterization, and placement of stents on June 14, 2017. Further, the ALJ detailed Plaintiff's disability examination with Dr. Crump-Austin and her resulting opinion. Therefore, the ALJ did not err by failing to order a consultative examination in the present case and Plaintiff's allegations of error in this regard do not constitute a basis for remand.

### 2. Dr. Lanthorn

Plaintiff asserts that the ALJ "erred in not discussing or explaining the weight, if any, he gave to the opinion of Dr. B. Wayne Lanthorn." [Doc. 21 at 13]. The Commissioner responds that "[a]lthough the ALJ did not explain the particular weight assigned to Dr. Lanthorn's opinion, he nevertheless discussed the opinion and made clear in his decision why he did not credit mental impairments beyond those in the RFC." [Doc. 23 at 14].

Dr. Lanthorn consultatively examined Plaintiff on September 2, 2015. [Tr. 389–93]. First, Dr. Lanthorn reviewed Plaintiff's medical history, personal and family history, and vocational history, and performed a mental status evaluation. [Tr. 389–91]. Ultimately, Dr. Lanthorn diagnosed moderate generalized anxiety disorder. [Tr. 392]. Dr. Lanthorn found that Plaintiff could understand, remember, follow, and make decisions on moderately complex instructions, and his estimated intellectual functioning was average. [*Id.*]. Additionally, Dr. Lanthorn opined that Plaintiff was likely to have moderate difficulty maintaining his attention and concentration throughout the work week due to his anxiety; Plaintiff's social interaction did not appear to be

significantly limited, as he related adequately to the examiner and presented with a clean and groomed appearance; and Plaintiff's general adaption skills were moderately to extremely limited, and he could be aware of simple hazards and take precautions. [*Id.*]. Lastly, Dr. Lanthorn found that Plaintiff may have moderate difficulty setting goals and making appropriate plans to achieve these goals independently; moderate difficulty working with the public and interacting with supervisors; and moderate difficulty adapting to change, and extreme difficulty dealing with additional stress. [*Id.*].

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Ultimately, there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

In the disability decision, the ALJ summarized Dr. Lanthorn's opinion in great detail when discussing Plaintiff's severe impairments [Tr. 22–23], as well as evaluating listing-level requirements [Tr. 27]. However, Plaintiff correctly states that the ALJ failed to indicate what weight was given to Dr. Lanthorn's opinion or how he considered the opinion in the RFC determination. The ALJ is not required to give "good reasons" for the weight assigned to non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482

F.3d 873, 876 (6th Cir. 2007)).  However, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ."  20 C.F.R. § 416.927(e)(2)(ii).  Social Security Ruling (SSR) 96–6P provides that, although "[a]dministrative law judges . . . are not bound by findings made by State agency . . . physicians and psychologists . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions."  1996 WL 374180, at *3 (July 2, 1996).

"The Sixth Circuit has previously found that the failure to explicitly discuss the opinion of a consultative, non-treating source was harmless error where the ALJ's decision was otherwise supported by substantial evidence."  *Wright v. Astrue*, No. 3:08-CV-102, 2009 WL 1471279, at *3 (E.D. Tenn. May 27, 2009) (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 839 (6th Cir. 2005); *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004)).  However, in the present case, the Court finds that the ALJ erred by failing to assign a weight to or analyze Dr. Lanthorn's opinion, and the Court cannot discern "a clear understanding of the reasons" for the weight applied to the opinion.  *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 805 (6th Cir. 2011) (citing *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)).

Ultimately, while the ALJ summarized Dr. Lanthorn's decision in great detail, the ALJ failed to analyze the opinion or make specific findings on how Plaintiff's mental impairments limited his ability to perform work-related activities.  *Cf. Bays v. Colvin*, No. 2:15-CV-170, 2016 WL 4384741, at *2 (E.D. Tenn. Aug. 17, 2016) (holding "the error in failing to explicitly state the weight given to [a consultative examiner's opinion] was harmless[, as] [t]he ALJ discusses the substance of [the consultative examiner's] opinion in multiple sections of his opinion and noted the deficiencies he found in [the] opinion"); *see, e.g.*, *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x

267, 272 (6th Cir. 2015) (indicating in dicta that "[a]lthough the ALJ did not assign a specific weight to [the consultative examiner's] opinion, he did emphasize" that the plaintiff failed to return after the initial examination).

The Commissioner claims that the ALJ noted that Plaintiff had no history of treatment at a mental health center or with a psychiatrist [Tr. 22], as well as that Dr. Lanthorn did not assess any limitation in avoiding simple hazards and only moderate difficulty in adapting to change, setting goals, and making appropriate plans [Tr. 392]. *See* [Doc. 23 at 15]. While the ALJ reviewed Dr. Lanthorn's opinion in great detail, "the ALJ's failure to articulate his reasons for rejecting or discounting the opinion[ ] . . . prevents the reviewing Court from evaluating whether the administrative decision is supported by substantial evidence or otherwise deprives the claimant of a substantial right." *Sears v. Colvin*, No. 1:11–cv–0096, 2015 WL 3606800, at *6 (M.D. Tenn. June 8, 2015).

Plaintiff claims that Dr. Lanthorn's opinion was supported by the opinion of his social worker, Gary Masters, and the opined extreme limitation in the ability to deal with additional stress in Dr. Lanthorn's opinion were not reflected in the ALJ's RFC. *See* [Doc. 21 at 13]. The Commissioner asserts that "the ALJ specifically considered the opinion of Mr. Masters and, finding it inconsistent with other evidence in the record, gave it no more than little weight." [Doc. 23 at 15]. The Commissioner also points to the ALJ's assignment of great weight to the opinions of the state agency consultants, who the Commissioner alleges "both found that Plaintiff's major limitations at the examination with Dr. Lanthorn stemmed from his physical condition." [*Id.*].

In the disability decision, the ALJ assigned little weight to Mr. Masters' opinion, noting that Mr. Masters was Plaintiff's treating social worker for a period of just under four months, he is not an acceptable medical source, and "his assessment appears too restrictive and inconsistent

with other evidence of record." [Tr. 29]. The ALJ noted that "the opinions of the State Agency consultants . . . appear consistent with the overall objective medical findings," and "while they indicated a medium exertional capability, the undersigned has restricted the claimant to a range of light exertion." [*Id.*].

Here, the ALJ again failed to analyze the medical record with respect to the effect of Plaintiff's mental impairments on his ability to perform work-related activities in the RFC determination. Although the ALJ reviewed Dr. Lanthorn's opinion in great detail, he failed to state the weight assigned to the opinion or how the opinion was considered under 20 C.F.R. § 404.1527. *Cf. Clark v. Berryhill*, No. 1:17-CV-500, 2017 WL 6987959, at *10 (N.D. Ohio Dec. 22, 2017) (finding harmless error for the ALJ's failure to assign weight to or "provide a rationale for rejecting or adopting" the opinion of a consultative examiner, as the ALJ "discussed the examination findings several times and at length," as well as "adequately explained why he found Clark could perform 'moderately complex' tasks, as opposed to the 'simple, repetitive' tasks opined by Dr. Schonberg"), *report and recommendation adopted sub nom.*, *Clark v. Comm'r of Soc. Sec.*, 2018 WL 454393 (N.D. Ohio Jan. 16, 2018). Rather, if the ALJ had detailed the specific reasoning of how Mr. Masters' opinion was inconsistent with in the medical record, the Court could have found that the ALJ's analysis also applied to Dr. Lanthorn's opinion—if applicable. *See Rearden v. Colvin*, No. 4:15-CV-070-HBB, 2016 WL 1629377, at *8 (W.D. Ky. Apr. 22, 2016) ("Though the ALJ here did not assign specific weight to the state agency psychologists, it can be inferred from the decision that the ALJ rejected their findings."). Therefore, the ALJ's analysis in the disability decision did not indicate that "the ALJ considered the relevant factors in its determination" of Dr. Lanthorn's opinion. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010); *see, e.g.*, *Monroe v. Comm'r of Soc. Sec.*, No. 5:15-CV-123-TBR-LLK, 2017 WL

1160581, at *4 (W.D. Ky. Mar. 28, 2017) ("However, the ALJ's discussion of Monroe's residual functional capacity includes no limitation responsive to Dr. Brooks-Horrar's above-quoted opinion.").

Ultimately, although the ALJ was not required to give "good reasons" for the weight assigned to Dr. Lanthorn's opinion, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (internal quotation marks omitted). Here, the Court finds that the ALJ's omission cannot be considered harmless error because it prejudiced Plaintiff "on the merits." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Therefore, on remand, the ALJ is instructed to properly consider Dr. Lanthorn's opinion in accordance with this Opinion and the SSA's regulations, as well as to assess the effect of Plaintiff's mental impairments on his ability to perform work-related activities.

### B.      Plaintiff's Subjective Allegations of Disability

Plaintiff further claims that the ALJ failed to weight his subjective allegations of disability, as he "clearly has severe abdominal difficulties, has suffered a heart attack with two episodes of stenting, and has severe mental difficulties." [Doc. 21 at 15]. The Commissioner responds that the ALJ properly found Plaintiff's subjective complaints of disability inconsistent with the medical record, and cited to objective medical findings and Plaintiff's course of treatment in support of this finding. [Doc. 23 at 10–11]. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Tr. 29].

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation, and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2–3. Then, the ALJ is responsible for determining the intensity, persistence, and limiting effects of an individual's symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4–8.

As the Court has already reviewed, in the disability decision, the ALJ found that Plaintiff's

"statements concerning the intensity, persistence and limiting effects of [his symptoms] are not entirely consistent with the medical evidence."  [Tr. 29].  "Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight."  *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *3–4 (E.D. Mich. June 10, 2019), *report and recommendation adopted by*, 2019 WL 2647260 (E.D. Mich. June 27, 2019) (citing *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018)).

As an initial matter, Plaintiff's arguments about his subjective allegations are within the ALJ's discretion.  *See Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (recognizing that the Sixth Circuit holds the ALJ's credibility findings to be virtually "unchallengeable") (internal citations omitted).  An ALJ's findings on credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Here, the Court finds that the ALJ appropriately reviewed the intensity, persistence and limiting effects of Plaintiff's symptoms pursuant to SSR 16-3p.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess.").  However, as the Court has already found that Plaintiff's case should be remanded for the ALJ to appropriately consider Dr. Lanthorn's opinion, on remand, the ALJ should also review Plaintiff's subjective allegations of disability in accordance with the applicable regulations.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 20**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to appropriately reconsider Dr. Lanthorn's opinion in accordance with this Opinion and the applicable regulations.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge